A99A0408. LEWIS v. SMITH.
(517 SE2d 538)

ANDREWS, Judge.

Deborah Lewis sued Don Smith alleging that she was injured in an automobile accident which occurred when Smith negligently lost control of his automobile, crossed over into the oncoming lane of traffic, and struck her automobile. In granting summary judgment in favor of Smith, the trial court concluded that the accident occurred without any negligence on the part of Smith when Smith lost control of the automobile after he suddenly and unforeseeably lost consciousness. On appeal, Lewis contends the trial court erred because there is evidence in the record showing Smith was negligent in that, (a) his loss of consciousness was foreseeable, and (b) he could have taken action to avoid the accident when he began to feel like he was going to lose consciousness.

Under appropriate circumstances, it may be established as a matter of law that an act of God was the sole proximate cause of an automobile accident, thus entitling a defendant to summary judgment on a claim that his alleged negligent operation of an automobile caused an accident.

[T]he term . . . '[a]ct of God' means an accident produced by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes, inunda-

tions, sudden death, or illness. This expression excludes all idea of human agency.

OCGA § 1-3-3 (3). It follows that, where the driver of an automobile suffers an unforeseeable illness which causes him to suddenly lose consciousness and control of the automobile, the driver's loss of control is not negligent, and he is not liable for any damages caused by the out-of-control automobile. *Freeman v. Martin*, 116 Ga. App. 237, 239 (156 SE2d 511) (1967); compare *Langston v. Allen*, 268 Ga. 733, 734-735 (493 SE2d 401) (1997). Rather, a sudden and unforeseeable loss of consciousness by a driver is a complete defense to a claim that the driver negligently lost control of the automobile and proximately caused an ensuing accident. Id. It also follows that, to establish an act of God defense based on illness producing a loss of consciousness, the driver must show that the loss of consciousness produced the accident without any contributing negligence on the part of the driver. *Jackson v. Co-Op Cab Co.*, 102 Ga. App. 688, 691 (117 SE2d 627) (1960); *Battey v. Savannah Transit Auth.*, 123 Ga. App. 685 (182 SE2d 129) (1971). Accordingly, loss of consciousness by a driver would not be a complete defense if by the exercise of ordinary care it was foreseeable to the driver that he might lose consciousness while driving. Id. And even if loss of consciousness was not foreseeable, it would still not be a complete defense if the evidence showed the loss of consciousness occurred, not suddenly, but in a manner that would have allowed a reasonable driver to take some action to avoid the ensuing accident.

Moreover, an act of God is an affirmative defense upon which the defendant carries the burden of proof at trial and on summary judgment. *Alabama Great Southern R. Co. v. McBryar*, 65 Ga. App. 153, 155-156 (15 SE2d 563) (1941); *Eidson v. Mathews*, 120 Ga. App. 711, 713-714 (172 SE2d 144) (1969) (physical precedent); *Metro. Publishers Rep. v. Arnsdorff*, 153 Ga. App. 877, 878 (267 SE2d 260) (1980). Accordingly, a defendant moving for summary judgment on this basis may not rely upon an absence of evidence in the record disproving the affirmative defense but must carry the burden of affirmatively proving the defense. *Hodge v. SADA Enterprises*, 217 Ga. App. 688, 691 (458 SE2d 876) (1995).

The evidence showed that Lewis was driving on a five-lane highway (two lanes of traffic in each direction divided by a turning lane) in the outside lane of traffic. Lewis testified she saw an automobile approaching from the opposite direction that had crossed over the center turning lane, was in the inside lane of traffic on her side of the road, and was coming head-on at her automobile without swerving. The approaching automobile struck a glancing blow to the rear of Lewis' automobile causing her to spin out of control and collide with

another automobile. The automobile which crossed the center line and struck Lewis was driven by Smith. Smith testified that, as he was driving his automobile, he felt a sudden rush to his head and does not remember anything else until he was in an ambulance after the accident. Smith was admitted to the hospital with an initial diagnosis that he lost consciousness as a result of a syncopal episode of undetermined origin. However, after Smith was examined and tests were conducted, Smith's physician stated that he was unable to determine any cause for a loss of consciousness.

Lewis does not take issue on appeal with Smith's contention that he lost consciousness as he was driving. In fact, Lewis' testimony that Smith's automobile came directly at her without swerving across two lanes of the highway tends to support Smith's claim that he was unconscious at the time. On appeal, Lewis does not contend that Smith was conscious when the accident occurred, but argues that the record shows Smith negligently contributed to the accident because he should have foreseen he would lose consciousness while driving and that he could have taken action to avoid the accident before he lost consciousness, but he failed to do so.

Lewis contends that Smith's loss of consciousness was foreseeable because, at the time of the accident, he was taking the prescription drug, Hytrin, which carried a warning that it could cause dizziness, faintness, or light-headedness. The physician who prescribed Hytrin for Smith testified that, although there was a low possibility Hytrin could have been a cause of Smith's loss of consciousness, it was probable that Hytrin did not contribute to his loss of consciousness. The physician testified that there was nothing in Smith's medical history that indicated Smith had previously suffered or might suffer a loss of consciousness. The record also showed that, approximately two hours before the accident, Smith had an appointment with another physician he had been previously referred to for evaluation of an intestinal problem unrelated to his Hytrin prescription. During that appointment, Smith's blood pressure and pulse were taken and both appeared normal. The physician who examined Smith during that appointment testified that no medical procedures were performed on or medications given to Smith, and that nothing in his examination of Smith gave any indication that Smith might suffer a blackout. Smith testified that he had never before suffered a loss of consciousness.

Lewis also contends that Smith's deposition testimony shows he had an opportunity to take action to avoid the accident after he first felt faint, but before he lost consciousness, and he negligently failed to do so. During his deposition, Smith was confronted with a notation in his physician's medical records about the accident which indicated that Smith told his physician that, as he was driving, he felt like he

was going to pass out and felt like he should get his car off the road and then he saw a white light and did not remember anything after that. Although Smith could not recall whether that was the exact manner in which he described the accident to his physician, he conceded that, when he felt the sudden rush to his head, he might have "tried or thought something." He further explained, however, in the deposition errata sheet authorized by OCGA § 9-11-30 (e) that, "When I felt this 1st [sic] sensation of a sudden rush to my head my first thought was to get off the road, but before I had time to react to it everything turned very white and I do not remember anything else until I was in the ambulance." *Young v. YMCA of Metro. Atlanta*, 204 Ga. App. 224, 225 (419 SE2d 97) (1992). Smith also testified that he could not recall the passage of any seconds or trying to maneuver his automobile between the time he first felt the sudden rush to his head and his loss of memory.

Accordingly, the issue presented is whether in moving for summary judgment Smith established a prima facie case in support of his affirmative defense by showing that his loss of consciousness caused the accident without any contributing negligence on his part. *Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508 (496 SE2d 732) (1997). In other words, the issue is whether Smith showed that his loss of consciousness was unforeseeable and that it happened so suddenly that he could not reasonably have taken any action to avoid the accident. If Smith established a prima facie case in support of his affirmative defense, the burden of production would shift to Lewis to produce evidence by way of affidavit or otherwise setting forth specific facts rebutting the affirmative defense and showing that there was a genuine issue for trial. *Smith v. Steinemann Dev. Co.*, 230 Ga. App. 635, 637 (497 SE2d 255) (1998); *Garrett v. NationsBank, N.A.*, 228 Ga. App. 114, 116 (491 SE2d 158) (1997).

As to Lewis' contention that Smith's use of the prescription drug, Hytrin, made it foreseeable to him that he would lose consciousness while driving, and that he was negligent in continuing to drive, this contention presented a medical question beyond the ken of a layman, therefore its resolution depended on expert medical testimony. *Cherokee County Hosp. Auth. v. Beaver*, 179 Ga. App. 200, 204 (345 SE2d 904) (1986). In cases involving causation issues which can be resolved solely by expert medical testimony, the testimony must be based at least on reasonable probability. *Maurer v. Chyatte*, 173 Ga. App. 343, 344-345 (326 SE2d 543) (1985). Therefore, expert medical testimony as to the possibility of a causal relation between a negligent act and the injuries alleged to have been caused by the negligence will not suffice to establish a legally sufficient causal relation. Id. at 344-345. Smith produced expert medical testimony that it was probable his use of Hytrin did not contribute to his loss of conscious-

ness. This testimony established the absence of a sufficient causal relation between Hytrin and Smith's loss of consciousness and was a prima facie showing that Smith's loss of consciousness was not foreseeable. The expert medical testimony produced by Lewis in rebuttal stating only that there was a small possibility Smith's use of Hytrin contributed to his loss of consciousness failed to establish a sufficient causal relation and thus failed to create a genuine issue of fact as to foreseeability. *Maurer,* 173 Ga. App. at 344-345.

As to Lewis' contention that Smith negligently contributed to the cause of the accident because he could have but failed to take action to avoid the accident before losing consciousness, Smith testified that he felt a sudden rush to his head, then everything turned white, and he had no further memory of the events until he remembered being in the ambulance. Smith also testified that, although his first thought when he felt the sudden rush to his head was to get off the road, he did not have time to react before he lost consciousness. He could not recall there being any passage of time in which he could have reacted between the sudden rush to his head and his loss of consciousness. This testimony by Smith was sufficient to make a prima facie showing in support of his affirmative defense that his loss of consciousness was so sudden that he had no reasonable opportunity to take action to avoid the accident. Lewis produced no evidence rebutting this prima facie defense. Compare *Waits v. Makowski,* 191 Ga. App. 794, 795-796 (383 SE2d 175) (1989) (evidence produced from which it could be reasonably inferred that the driver was not unconscious at the time of the collision or that he lost consciousness only after the collision).

Since Lewis failed to produce any specific facts rebutting Smith's affirmative defense and showing there was a genuine issue for trial, the trial court properly granted summary judgment in favor of Smith. *Freeman,* 116 Ga. App. at 239-240, 245.

*Judgment affirmed. McMurray, P. J., and Ruffin, J., concur.*

DECIDED MAY 6, 1999 — CERT. APPLIED FOR.

*Gerry E. Holmes,* for appellant.

*Brinson, Askew, Berry, Seigler, Richardson & Davis, J. Anderson Davis,* for appellee.