## A05A0703. JONES v. ORRIS et al.
### (616 SE2d 820)

PHIPPS, Judge.

Lisha Jones appeals from the trial court's order granting the defendants summary judgment in her medical malpractice action. She contends she is entitled to a jury trial because there are material issues of fact as to the issue of proximate cause. She also asserts that the trial court erred by granting summary judgment to two defendants less than thirty days after their motions for summary judgment had been filed. Because the opinion of Jones's expert that the defendants' negligence proximately caused her damage is not supported by evidence in the record, and because Jones waived her objections to the shortened time frame, we affirm the trial court.

A de novo standard of review applies to an appeal from a grant of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[1] Viewed in this light, the record shows that Jones filed suit against Dr. Gary Orris, Northside Hospital, Inc., Dr. Mark Koralewski, Kaiser Permanente Insurance Company, and XYZ Corporation d/b/a Kaiser Permanente,[2] alleging that she suffered a ruptured appendix as a result of their medical malpractice and negligence. She also contends that she suffered permanent damages as a result of the rupture, including scar tissue that compromised her fertility. Jones attached to her complaint an affidavit from Dr. Jimmy Graham stating that he had

> personally reviewed the certified copies of the medical records of the treatment of Lisa [sic] Phillips Jones regarding her treatment with the Defendants in August of 1999, including the emergency department at Northside Hospital and the medical clinic at Kaiser Permanente.

---

[1] *Rice v. Huff,* 221 Ga. App. 592, 593 (472 SE2d 140) (1996).

[2] Jones subsequently dismissed Northside Hospital and Kaiser Permanente Insurance Company as defendants and substituted The Southeast Permanente Medical Group, Inc. for XYZ Corporation.

Copies of the medical records reviewed by Dr. Graham were not attached to his affidavit. The following persons were deposed during discovery: Jones, Dr. Orris, Dr. Koralewski, Dr. Graham, and Dr. Dorothy Mitchell-Leef (Jones's reproductive specialist). Certified copies of medical records were not attached to any of these depositions.[3]

Without Jones's medical records, it is difficult to piece together the chronology of her medical travails. The record contains no medical records, deposition testimony, or other expert evidence giving the details of Jones's appendectomy or subsequent hospital care, but contains only her testimony, the defendants' testimony of events occurring before the surgery, and Jones's fertility doctor's testimony of her treatment long after the surgery.

Jones herself testified at length regarding the events leading up to and following her emergency appendectomy, which included two calls to the Kaiser Permanente nurse advice line, followed by an immediate clinic visit from which Jones was transported by ambulance to Northside Hospital. Two CT scans were inconclusive, and she was discharged with medication and instructions to follow up at Kaiser, which she did three days later. After Jones described her continuing symptoms, Dr. Koralewski suspected a urinary tract infection and prescribed an antibiotic until he obtained test results. Jones returned to the emergency room the next day and underwent exploratory surgery. Jones testified that the surgeon told her that her appendix had ruptured and her abdomen was filled with pus. Jones remained in the hospital for almost two weeks after the surgery. After the surgery, Jones said, she had difficulty conceiving and underwent surgery to remove scar tissue.

Dr. Mitchell-Leef testified that she treated Jones for infertility after her appendectomy and discovered upon laparoscopic surgery that abdominal adhesions were causing fertility problems. She said that she often saw adhesions of this nature in patients who have had a previous infection, such as from pelvic inflammatory disease, or after a surgical procedure to remove a gallbladder or appendix, and she noted that Jones had previously had an appendectomy. She further testified that a patient can develop adhesions in the absence of infection after abdominal surgery based on a natural tendency to

---

[3] Dr. Mitchell-Leef produced uncertified copies of her medical chart for Jones at her deposition and these records were attached to her deposition. An uncertified copy of a radiologist's CT scan report was attached to Dr. Orris's deposition, but this report was neither prepared nor identified by Dr. Orris. Three uncertified pages of Jones's Southeast Permanente medical records from 1999 were attached to Dr. Koralewski's deposition and he produced these documents for the deposition.

develop adhesions. However, an infection associated with an appendectomy will put a patient at higher risk for adhesions. She acknowledged that she could not testify with a reasonable degree of medical certainty whether an earlier or less invasive appendectomy would have prevented Jones's adhesions. She likewise had no opinion about whether earlier intervention would have prevented infection and lowered the likelihood of adhesions.

Dr. Orris testified regarding his care of Jones on her first emergency room visit, from which she was discharged without a diagnosis of appendicitis. He testified that he ordered a CT scan in order to rule out the condition, and the radiologist informed him by telephone that although he did not see Jones's appendix on the CT scans, he saw no evidence of appendicitis because the scan showed no inflammatory changes. According to the radiologist, the CT scan was normal and Jones did not have appendicitis. Dr. Orris decided to discharge her without a surgical consult based on the negative CT scan and a considerable improvement of her symptoms during eight hours of observation at the hospital. He instructed her upon discharge to return to the emergency room if her symptoms worsened and to follow up with her doctor in two days.

Dr. Koralewski testified that when Jones came to him for follow-up care after her visit to the emergency room, she informed him that she had a negative CT scan in the emergency room. She also reported that she had had no nausea, vomiting, fever, or diarrhea in the last 24 hours. She reported a white vaginal discharge for two days and painful urination. Red and white blood cells were found in her urine, and Dr. Koralewski diagnosed a urinary tract infection and prescribed an antibiotic.

Dr. Graham, Jones's expert, testified that Dr. Orris violated the standard of care by failing to rule out appendicitis and call for a surgical consult. He testified that he had previously reviewed portions of Dr. Orris's and Dr. Koralewski's depositions, and Jones's Northside Hospital and Kaiser Permanente medical records.[4] Dr. Graham testified that Dr. Koralewski violated the standard of care by failing to analyze why Jones had an abnormal urinalysis with no urinary tract infection symptoms and by discharging her with the diagnosis of a urinary tract infection. According to Dr. Graham, Dr. Koralewski treated the lab results and not the patient, who had been sick for four days.

Dr. Graham acknowledged that he had no opinion whether Jones suffered any permanent injury as a result of her appendicitis. He further acknowledged that he could not state with a reasonable

---

[4] Dr. Graham did not review the plaintiff's deposition.

degree of medical certainty whether any conduct of Dr. Orris caused or contributed to any of Jones's current conditions, that his sole role in the case would be to testify about the standard of care, and that he had no opinion about Jones's alleged damages in the case. Finally, he acknowledged that he had no opinion within a reasonable degree of medical certainty as to when Jones's appendix burst. In his opinion, her appendix had not ruptured before her CT scan in the emergency room because the CT scan would have revealed the rupture. He could not testify whether her appendix had already ruptured by the time she saw Dr. Koralewski. He could not testify to a reasonable degree of medical certainty about the extent of any post-surgical adhesions Jones would have suffered if her appendix had not ruptured.

On July 20, 2004, Dr. Orris moved for summary judgment in his favor on all claims against him because Jones failed to provide the court with any expert testimony on the issue of proximate cause. On August 6, 2004, a hearing on Dr. Orris's motion was scheduled for August 20, 2004. On August 12, 2004, Southeast Permanente and Dr. Koralewski moved for summary judgment as well.

On August 19, 2004, Jones filed a reply brief to all of the pending summary judgment motions. On the same day, Jones filed Dr. Graham's affidavit, in which he opined for the first time that the defendants' actions were the proximate cause of Jones's injuries. In this affidavit, Dr. Graham gave the following explanation of the materials he had reviewed in forming his opinions:

> I have personally reviewed the certified copies of the medical records of the treatment of Lisha Phillips Jones regarding her treatment with the Defendants in August of 1999, including the emergency department at Northside Hospital and the medical clinic at Kaiser Permanente. Since the time of my last deposition,[5] I have also reviewed the medical records of Northside Hospital for the period of time she was hospitalized after her ruptured appendix was diagnosed, as well as the Plaintiff's medical records from Dr. Mitchell-Leef. I have also reviewed the deposition of Dr. Mitchell-Leef.

Certified copies of the medical records Dr. Graham reviewed are not attached to his affidavit and, as noted earlier, do not appear elsewhere in the record before us.

At the beginning of the August 20 hearing on Dr. Orris's motion for summary judgment, the trial court was informed that there were

---

[5] Dr. Graham stated in his deposition that he had read only portions of Dr. Orris's and Dr. Koralewski's depositions, without explaining which portions.

two pending motions for summary judgment on the same grounds, as well as a motion to amend the pre-trial order. The trial court announced that it would deal with the motions for summary judgment first and Jones's counsel did not object to the trial court's consideration of both motions. At no time during the hearing did Jones's counsel object to the court's consideration of all of the pending motions for summary judgment. At the conclusion of the hearing, the trial court announced that it would be granting summary judgment to all of the defendants because there was insufficient evidence in the record to support Dr. Graham's opinions.

Four days later, Jones filed a motion asking the court to reconsider its oral order granting summary judgment to Dr. Koralewski and Southeast Permanente on the grounds that she had not been given thirty days to respond to the motion and file affidavits. On the same date, Jones's counsel filed an affidavit stating that her medical treatment records were attached. The attached records were again uncertified. On September 2, 2004, the trial court entered a written order granting summary judgment to all defendants and denying Jones's motion for reconsideration.

1. We find no merit in Jones's claim that the trial court improperly shortened the time for her to reply to Dr. Koralewski and Southeast Permanente's motions for summary judgment. The trial court properly concluded that Jones waived any objection to a hearing less than 30 days after the motions were filed by arguing the motions without objection during the hearing.[6]

2. Jones asserts the trial court should not have granted summary judgment to the defendants because there was sufficient evidence in the record to create an issue of fact on the issue of proximate cause.

A plaintiff must establish the following three essential elements to recover in a medical malpractice action: "(1) the duty inherent in the doctor-patient relationship; (2) the breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure be the proximate cause of the injury sustained."[7]

> In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge

---

[6] See *Dennisson v. Lakeway Publishers*, 196 Ga. App. 85 (1) (395 SE2d 366) (1990) (party waived right to 30 days to respond to motion for summary judgment by failing to raise this procedural defect at the hearing on the motion).

[7] *Zwiren v. Thompson*, 276 Ga. 498, 499 (578 SE2d 862) (2003) (punctuation omitted).

beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury.[8]

Expert testimony is also required in simple negligence cases where medical questions are raised that are beyond the common knowledge of a layperson.[9] As this is such a case, expert testimony was required to establish that Southeast Permanente's negligence was the proximate cause of Jones's injuries.

In this case, Dr. Graham's second affidavit, filed in opposition to the motion for summary judgment, provides the only expert testimony on the issue of proximate cause. However, certified copies of the medical records he reviewed were not attached to his affidavit as required by OCGA § 9-11-56 (e).[10] This omission does not, by itself, automatically preclude consideration of Dr. Graham's affidavit in our summary judgment analysis. "An affidavit need not attach material upon which it is based if that material is part of the record in the case and is before the trial court, provided that the affidavit clearly identifies the record matter upon which it is based."[11] As a result, the Supreme Court of Georgia has found that medical records produced and authenticated by a defendant physician in his deposition and appended to the deposition as an exhibit were part of the record and sufficient to support the opposing expert's affidavit.[12] Although not expressly stated in its opinion, the Supreme Court presumably found that such documents were sufficiently authenticated as to be admissible in evidence, as only admissible evidence may be considered when evaluating a motion for summary judgment.[13]

An expert's reliance on other evidence in the record, in addition to uncertified medical records, can sometimes render the affidavit

---

[8] Id. at 500-501.

[9] *Lewis v. Smith*, 238 Ga. App. 6 (517 SE2d 538) (1999); *Gilbert v. R. J. Taylor Mem. Hosp.*, 265 Ga. 580, 581, n. 4 (458 SE2d 341) (1995).

[10] OCGA § 9-11-56 (e) provides in relevant part: "Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith." See also *Goring v. Martinez*, 224 Ga. App. 137, 139 (2) (b) (ii) (479 SE2d 432) (1996).

[11] *Jones v. Rodzewicz*, 165 Ga. App. 635, 637 (4) (302 SE2d 402) (1983).

[12] *Paulin v. Okehi*, 264 Ga. 604, 605 (449 SE2d 291) (1994). See also *Washington v. Ga. Baptist Med. Center*, 223 Ga. App. 762, 766-767 (3) (478 SE2d 892) (1996) (expert could rely on extensive medical records attached to defendant doctors' depositions that were identified and referred to by doctors in their sworn testimony; expert's affidavit stated he had reviewed the depositions), rev'd on other grounds, *Porquez v. Washington*, 268 Ga. 649 (492 SE2d 665) (1997).

[13] See *Lance v. Elliott*, 202 Ga. App. 164, 167 (413 SE2d 486) (1991) (evidence inadmissible at trial is also inadmissible on motion for summary judgment).

sufficient for a trial court's consideration of whether summary judgment is appropriate.[14] This is true only if the other evidence contains sufficient facts on which the expert can base his opinions.[15] Other evidence properly in the record, but not expressly relied upon by the expert in forming his opinions, cannot be used to find a sufficient basis for the expert's opinions.[16]

With these considerations in mind, we find that the following documents were sufficiently identified by Dr. Graham as forming the basis for his opinion and are properly in the record: (1) Southeast Permanente's records documenting Jones's August 20, 1999 visit to Dr. Koralewski that were produced by Dr. Koralewski during his deposition and attached as exhibits to his deposition; (2) Jones's medical records produced by Dr. Mitchell-Leef that were attached to and referenced in her deposition; and (3) the deposition of Dr. Mitchell-Leef.

After examining these documents properly in the record and relied upon by Dr. Graham, and viewing every inference in favor of Jones, we find that Dr. Graham's proximate cause opinions are not adequately supported. These documents provide no information about Jones's second visit to the emergency room, the timing of the discovery of her ruptured appendix, or the exploratory surgery that resulted in her appendectomy. While the patient history in Dr. Mitchell-Leef's records states that Jones had a ruptured appendix and appendectomy at Northside Hospital in 1999,[17] this information is too general to support Dr. Graham's conclusion that the defendants' conduct in August of that year proximately caused Jones's injuries. As a result, the trial court properly granted summary judgment to the defendants.

*Judgment affirmed. Andrews, P. J., and Mikell, J., concur.*

DECIDED JUNE 27, 2005 — 

*Robert C. Koski*, for appellant.
*Love, Willingham, Peters, Gilleland & Monyak, Jonathan C.*

---

[14] See *Jones v. Rodzewicz*, supra (trial court should have considered expert affidavit that relied on plaintiff's affidavit in addition to medical records not in the record).

[15] *Johnson v. Srivastava*, 199 Ga. App. 696, 697 (1) (405 SE2d 725) (1991) (plaintiff's affidavit did not contain sufficient facts to support expert's opinion in medical malpractice case).

[16] See *Crawford v. Phillips*, 173 Ga. App. 517-518 (1) (326 SE2d 593) (1985).

[17] See *Southern R. Co. v. Lawson*, 256 Ga. 798, 801-802 (3) (353 SE2d 491) (1987) (statements made for purposes of medical diagnosis and describing medical history are admissible in evidence).

*Peters, Alston & Bird, Sterling G. Culpepper, Greenberg Traurig, Lori G. Cohen, Green, Johnson & Landers, Mary P. Tucker,* for appellees.