## A07A0040. RENZ v. NORTHSIDE HOSPITAL, INC.
(648 SE2d 186)

JOHNSON, Presiding Judge.

This is a medical malpractice case in which the trial court ruled that the defendant hospital is entitled to summary judgment because there is no evidence that the plaintiff's damages were proximately caused by a hospital employee. Because the record contains evidence creating a genuine issue of material fact as to proximate cause, the trial court's summary judgment ruling is erroneous and must be reversed.

On July 1, 2002, 26-year-old Jessica Renz underwent a C-2 nerve block at Northside Hospital to treat migraine headaches. The procedure was performed by Dr. Bruce Hines and involved inserting a

---

[1] 281 Ga. 744 (642 SE2d 687) (2007).

[2] *Simon Property Group v. Benson*, 278 Ga. App. 277 (628 SE2d 697) (2006).

[3] *Benson*, supra at 745.

needle into Renz's neck to the level of the second cervical vertebrae and injecting medication to the nerve root. After the procedure, Renz, who was crying and complaining of nausea and headache, was taken to a recovery room where she was monitored and cared for by Northside Nurse Heidi Taylor. After approximately an hour-and-a-half in the recovery room, Nurse Taylor discharged Renz, who was still complaining of headache.

About two hours after the discharge, Renz called Northside to complain that her headache was not getting better and that she was in a lot of pain. She spoke to Northside Nurse Anne Salisbury, who told Renz to give the procedure a chance to work, to go into a dark room and try to sleep, to fill her prescription for an anti-inflammatory medication and to call back if she experienced further problems. Nurse Salisbury does not know if she spoke to Dr. Hines or any other physician about Renz's call. She deposed that it is her belief she would have spoken with Dr. Hines about the call, but she further deposed that she would not necessarily have discussed it with a doctor and that it is possible she advised Renz without consulting a physician. Dr. Hines testified at his deposition that he was not made aware of Renz's telephone call and that Nurse Salisbury did not consult him about it.

Later that evening, Renz began having trouble breathing and walking. She eventually lost consciousness, and her boyfriend drove her to the emergency department at Piedmont Hospital. A neurosurgeon, Dr. James Robinson, diagnosed Renz as having suffered a stroke caused by a lack of blood flow to the right side of her cerebellum. Dr. Robinson performed a craniotomy, whereby he removed Renz's permanently damaged brain tissue.

Renz sued Northside and Dr. Hines, claiming that during the C-2 nerve block a vein was lacerated, that after the procedure Renz was not properly monitored, and that she was negligently discharged from the hospital. Northside moved for summary judgment. The trial court granted the motion on the sole ground that there is no evidence that any breach of the standard of care by a Northside employee proximately caused Renz's alleged damages. Renz appeals.

1. Renz asserts that the trial court erred in finding no evidence of proximate cause as to any Northside employee because in the record there is expert testimony that negligence by Northside nurses was a contributing cause of her injuries.[1] We agree, although at the outset we stress the narrowness of this opinion. The only issue before

---

[1] In their appellate briefs, neither Renz nor Northside has clarified Dr. Hines' relationship with the hospital. We note that Dr. Hines deposed that he is employed by Northside Anesthesiology Consultants and that he does not consider himself to be an employee of Northside Hospital.

us is whether there is any evidence that a Northside nurse's negligence was a contributing cause of Renz's injury. As more fully explained below, a doctor testified that he is familiar with the applicable standard of care for nurses, that such standard was breached and that such breach contributed to the injury. We specifically note that we are not addressing the question of whether this doctor is indeed a qualified expert to opine on nursing standards of care, an issue that was raised below by Northside in a motion to dismiss, but which the trial court did not rule on and is thus still pending below.[2] Our holding in this appeal is simply that, based on the record before us, the doctor's purportedly expert testimony amounts to some evidence of proximate cause sufficient to undermine the trial court's limited summary judgment ruling.

> To prevail at summary judgment under OCGA § 9-11-56, the moving party must demonstrate that there is no genuine issue of material fact and that the undisputed facts, viewed in the light most favorable to the nonmoving party, warrant judgment as a matter of law. A defendant may do this by showing the court that the documents, affidavits, depositions, and other evidence in the record reveal that there is no evidence sufficient to create a jury issue on at least one essential element of the plaintiff's case. In reviewing the grant or denial of a motion for summary judgment, we apply a de novo standard of review and consider the evidence with all reasonable inferences therefrom in favor of the party opposing summary judgment.[3]

In the instant case, Dr. Mitchell Tobias, a board certified anesthesiologist, opined at his deposition that during the C-2 block procedure Dr. Hines mistakenly inserted the needle and injected medication into Renz's vertebral artery, which caused her stroke. Dr. Tobias further testified that he is familiar with the standard of care for nurses in the recovery treatment of patients who have undergone a C-2 block, and in his opinion there were breaches of that standard of care by the Northside nurses monitoring Renz and those mistakes contributed to her injuries. Given Renz's condition in the recovery room — nausea, headache and crying — Dr. Tobias testified that it was inappropriate for a nurse to discharge her from the hospital without a thorough examination by the treating physician.

---

[2] See Division 2 of this opinion.

[3] (Citations and punctuation omitted.) *Johnson v. E. A. Mann & Co.*, 273 Ga. App. 716, 717 (616 SE2d 98) (2005).

Dr. Tobias further testified that if Nurse Salisbury did indeed fail to report Renz's post-discharge call complaining of headache and severe pain to a doctor, such failure was a violation of the applicable standard of care. Dr. Tobias deposed that the nurse instructing Renz to lie down in a dark room, rather than telling her to go to the emergency room, and failing to tell the treating physician about the call was absolutely substandard.

When asked why it was important for Nurse Salisbury to report Renz's call to a doctor, Dr. Tobias testified:

> For just such a reason as transpired in this case. I think that the doctor — because sooner evaluation and knowledge and appropriate treatment is probably going to equate to lesser problems later for the patient. . . . I think that the sooner things were brought to attention and were taken care of, the better outcome for the person.

Dr. Tobias explained that he believed to a reasonable degree of medical probability that Renz would have lost less brain tissue, and her rehabilitation and recovery would have been shorter and easier, if the problem had been recognized earlier, whether in the hospital recovery room or after Renz called and complained to the hospital nurse.

As Northside points out, Dr. Robinson contradicted Dr. Tobias' opinion by testifying that in his judgment, earlier recognition that there was a problem after the C-2 nerve block would not have likely altered Renz's long-term outcome. This conflict in the doctors' testimony, however, does not mandate summary judgment in Northside's favor. On the contrary, it establishes why summary judgment is inappropriate based on the issue of proximate cause, one of the essential elements of Renz's medical malpractice action.

> To prove a medical malpractice claim in Georgia, a plaintiff must show: (1) the duty inherent in the health care provider-patient relationship; (2) breach of that duty by failing to exercise the requisite degree of skill and care; and (3) that this failure is the proximate cause of the injury sustained.[4]

> In order to establish proximate cause by a preponderance of the evidence in a medical malpractice action, the plaintiff

---

[4] (Citation omitted.) *Knight v. West Paces Ferry Hosp.*, 262 Ga. App. 220, 221 (585 SE2d 104) (2003).

must use expert testimony because the question of whether the alleged professional negligence caused the plaintiff's injury is generally one for specialized expert knowledge beyond the ken of the average layperson. Using the specialized knowledge and training of his field, the expert's role is to present to the jury a realistic assessment of the likelihood that the defendant's alleged negligence caused the plaintiff's injury.[5]

Contrary to the trial court's judgment, Dr. Tobias' testimony that Renz's injuries and recovery period would have been lessened if the Northside nurses had not violated the standard of care is sufficient to create a genuine issue of material fact on the element of proximate cause. The trial court thus erred in granting summary judgment to Northside.

2. Northside argues that we should affirm the trial court's grant of summary judgment on the alternative basis that Renz's complaint is subject to dismissal because Dr. Tobias' affidavit, filed with the complaint, does not meet the requirements of OCGA § 9-11-9.1. Northside did move to dismiss the complaint on this ground in the trial court, but the trial court never ruled on that motion. Instead, the court, as noted above, granted Northside's motion for summary judgment exclusively on the ground that there is no evidence of proximate cause.

It is true that we may affirm a judgment that is right for any reason.[6] But here, Northside is not seeking affirmance of the summary judgment for a reason other than that espoused by the trial court. Rather, it is seeking an entirely different relief from summary judgment, that of dismissal of the complaint based on a deficient affidavit. Since that form of relief has not yet been ruled upon by the trial court, and this is a court for the review and correction of errors committed in the trial court, we shall not consider that matter in this appeal.[7]

*Judgment reversed. Phipps and Bernes, JJ., concur.*

DECIDED JUNE 18, 2007.

*Decker, Hallman, Barber & Briggs, W. Winston Briggs*, for appellant.

---

[5] *Jones v. Orris*, 274 Ga. App. 52, 56-57 (2) (616 SE2d 820) (2005).

[6] *Jordan v. City of Atlanta*, 283 Ga. App. 285, 287 (641 SE2d 275) (2007).

[7] See *King v. Zakaria*, 280 Ga. App. 570, 579 (5) (d) (634 SE2d 444) (2006).

*Sommers, Scrudder & Bass, Susan V. Sommers, Jane C. Taylor*, for appellee.