**FIRST DIVISION**
**BARNES, P. J.,**
**BROWN and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be** *physically received* **in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**May 4, 2022**

# In the Court of Appeals of Georgia

A22A0186. SCREVEN COUNTY v. SANDLIN.

HODGES, Judge.

Joseph C. Sandlin, an inmate at the Screven County Correctional Institute, was injured in a single-vehicle accident while riding in a pickup truck owned by Screven County (the "County"). Sandlin alleged that the accident was caused by the negligence of the driver, who was a County employee, and that the County was negligent under theories of respondeat superior and negligent entrustment. In a renewal action, Sandlin sued the County, and the County moved for summary judgment. Following a hearing, the trial court denied the County's motion and granted a certificate of immediate review. We granted the County's application for interlocutory appeal from the trial court's denial of its summary judgment motion. The County now argues that the trial court erred in granting summary judgment

because the undisputed evidence shows that the accident was caused by an "act of God," and thus, no material fact questions exist. For the reasons that follow, we reverse.

Summary judgment is appropriate when the pleadings and evidence "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." OCGA § 9-11-56 (c). A defendant seeking summary judgment may demonstrate this

> by either presenting evidence negating an essential element of the plaintiff's claims or establishing from the record an absence of evidence to support such claims. Thus, the rule with regard to summary judgment is that a defendant who will not bear the burden of proof at trial need not affirmatively disprove the nonmoving party's case, but may point out by reference to evidence in the record that there is an absence of evidence to support any essential element of the nonmoving party's case. Where a defendant moving for summary judgment discharges this burden, the nonmoving party cannot rest on its pleadings, but rather must point to specific evidence giving rise to a triable issue.

(Citations and punctuation omitted.) *Cowart v. Widener*, 287 Ga. 622, 623 (1) (a) (697 SE2d 779) (2010). We review a trial court's grant or denial of summary judgment de novo, construing the evidence and all reasonable inferences drawn from it the light most favorable to Sandlin as the nonmoving party. Id. at 624 (1) (a).

2

So viewed, the evidence shows that on May 27, 2014, Sandlin was wearing his seatbelt and sitting in the middle of the backseat of a County truck. County employee Robert Curtis was driving Sandlin and other prisoners in the truck for a work detail. Sandlin deposed that during the drive, he heard another prisoner cry out. When he looked up, he saw that the truck had accelerated and was veering off the road, and that Curtis "wasn't waking up . . . he was out . . . laying on the steering wheel." The truck "jumped" a ditch or culvert, and slid into the next concrete culvert, which stopped its motion. Sandlin's seatbelt broke, and he deposed that he was thrown into the dashboard and windshield. He deposed that others in the truck "finally shook [Curtis] up" and that Curtis was "still kind of in shock . . .." Sandlin, Curtis, and the others eventually were taken to a hospital emergency department.

The doctor who examined Curtis at the emergency department the day of the accident wrote in the "Emergency Physician Record" that Curtis reported experiencing "headache" and "fatigue" just prior to the episode, and that he "lost consciousness." The doctor also recorded that Curtis has "diabetes" and "hypertension." In the "Chief Complaint" section of the report, the physician wrote "syncope" and "single episode." In the "Clinical Impressions" portion of the report,

3

the physician wrote: "?Syncope/ ?fell asleep[.]" Curtis subsequently saw a neurologist who diagnosed him with epilepsy and found that he had experienced a seizure.

In a deposition, Curtis averred that he had no independent memory of the accident, that he had never previously been diagnosed with epilepsy or related symptoms, and that he "had never had any medical condition that caused [him] to lose consciousness." He deposed that he had never lost consciousness while driving at any time prior to the accident and had never had issues with any medication causing a loss of consciousness. Rick Jordan, the Screven County manager, stated in his deposition that prior to the date of the accident, the County "had no knowledge of any impairment or illness affecting Robert Lester Curtis's ability to operate a motor vehicle . . . ."

In its sole enumeration of error, the County contends that the trial court erred in denying its motion for summary judgment because the uncontradicted evidence showed that Curtis's seizure and loss of consciousness were unforeseeable "acts of God."

> [U]nder appropriate circumstances, it may be established as a matter of law that an act of God was the sole proximate cause of an automobile accident, thus entitling a defendant to summary judgment on a claim that his alleged negligent operation of an automobile caused an accident.

4

OCGA § 1-3-3 (3) defines an "act of God" as "an accident produced by physical causes which are irresistible or inevitable, such as lightning, storms, perils of the sea, earthquakes, inundations, sudden death, or *illness*." . . . It follows that, where the driver of an automobile suffers an unforeseeable illness which causes him to suddenly lose consciousness and control of the automobile, the driver's loss of control is not negligent, and he is not liable for any damages caused by the out-of-control automobile. The driver must show that an unforeseeable loss of consciousness produced the accident without any contributing negligence on his part.

(Citations and punctuation omitted; emphasis in original.) *Halligan v. Broun*, 285 Ga. App. 226, 226-227 (645 SE2d 581) (2007).

Here, the County presented uncontroverted evidence that Curtis had never previously been diagnosed with epilepsy or related symptoms and had never previously lost consciousness while driving such that he could have foreseen this seizure or loss of consciousness.[1] The County also presented uncontroverted

---

[1] As noted above, the emergency department physician wrote, in the "Clinical Impressions" section, "?Syncope/?fell asleep[.]" As these "impressions" are preceded by the physician's own question mark designation, clearly indicating that the physician was not making any definitive statement in this section as to what had occurred, this notation does not create a material question of fact regarding whether Curtis fell asleep. "Guesses or speculation which raise[] merely a conjecture or possibility [are] not sufficient to create even an inference of fact for consideration on summary judgment." (Citation and punctuation omitted.) *Mansell v. Star*

5

evidence, in the form of the affidavit from the County manager, that the County was unaware of any impairment or illness that Curtis had, such that it could have foreseen that Curtis would have a seizure or lose consciousness while driving a County vehicle.

In presenting this evidence and, thus, pointing to an absence of evidence that either Curtis or the County could have foreseen Curtis's seizure and sudden loss of consciousness on the day of the accident, the County "established a prima facie case in support of [its] affirmative defense of an 'act of God.'" *Halligan*, 285 Ga. App. at 227. This being so, "the burden of production would shift to [Sandlin] to produce evidence by way of affidavit or otherwise setting forth specific facts rebutting the affirmative defense and showing that there was a genuine issue for trial." *Lewis v. Smith*, 238 Ga. App. 6, 9 (517 SE2d 538) (1999).

Sandlin has failed to meet this burden. He counters that evidence in the record shows that Curtis knew that he had hypertension and diabetes, and that he deposed that he did not recall whether he had checked his blood sugar on the day of the accident, and that he did not keep a record of his blood sugar levels. Sandlin posits that this "negligence" prevented Curtis from foreseeing his problem. Sandlin also

*Enterprises/Texaco, Inc.*, 256 Ga. App. 257, 259 (568 SE2d 145) (2002).

6

argues that the physician noted that Curtis reported having a headache and feeling fatigued prior to the accident.[2] This, Sandlin argues, means that Curtis's seizure or loss of consciousness "was therefore not sudden and unforeseeable." Sandlin, however, points us to no evidence in the record that hypertension or diabetes, or a failure to check one's blood sugar, leads to seizures or sudden loss of consciousness. Nor does he direct us to any evidence indicating that fatigue or a headache are precursors to a seizure or sudden loss of consciousness.[3] See generally *Lewis*, 238 Ga. App. at 8-9.

---

[2] Sandlin's appellate brief also contends that the County "knew [] Officer Curtis had health problems in 2012" and that he had "previously run off the road in a County vehicle due to excessive speed" in 2012, but in contravention of our rules, Sandlin's citations for these claims refer only generally to a 56-page section of the record. "Each enumerated error shall be supported in the brief by *specific reference* to the record . . .. In the absence of a *specific reference*, the Court will not search for and may not consider that enumeration." (Emphasis supplied.) Court of Appeals Rule 25 (c) (2) (i). Further, Sandlin cites to nothing in the record, nor does he even argue, that the issues the County allegedly knew about related to any sort of seizure or loss of consciousness, or that Sandlin's alleged prior driving issue involved a seizure or loss of consciousness such that the County or Curtis could have foreseen that Curtis would or could lose consciousness while driving a County vehicle. On these assertions, Sandlin has failed to carry his burden of showing error by the record. See *Bennett v. Cotton*, 244 Ga. App. 784, 787 (3) (536 SE2d 802) (2000).

[3] In fact, Sandlin himself cites to deposition testimony in which Curtis was asked if a headache would "have given you some indication that something was wrong?" Curtis responded, "A headache? Honestly, no, sir."

Because Sandlin failed to produce any specific facts rebutting the County's affirmative defense and showing that there was a genuine issue for trial, the trial court's denial of summary judgment to the County must be reversed.

*Judgment reversed. Barnes, P. J., and Brown, J., concur*.