**FOURTH DIVISION**
**DILLARD, P. J.,**
**MERCIER and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**February 1, 2023**

# In the Court of Appeals of Georgia

A22A1566. ABM AVIATION v. PRINCE.

MARKLE, Judge.

Loree Prince was injured when the driver of the airport shuttle in which she was riding suffered a medical emergency, lost control of the bus, and crashed. Prince sued ABM Aviation, Inc. d/b/a Air Serv Corporation ("ABM") for negligence based on respondeat superior, as well as direct liability for negligent hiring, retention, training, and supervision. The trial court denied ABM's motion for summary judgment, and we granted interlocutory review. On appeal, ABM argues that it was entitled to summary judgment because the medical emergency that caused the accident was an "act of God," and that the trial court erred by allowing the negligent hiring, retention, training, and supervision claims to proceed. For the reasons that follow, we conclude the trial court properly denied the summary judgment motion

with regard to the respondeat superior claim, but that it erred by denying the motion with regard to the direct liability claims. Accordingly, we affirm in part and reverse in part.

> Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Summary judgments enjoy no presumption of correctness on appeal, and an appellate court must satisfy itself de novo that the requirements of OCGA § 9-11-56 (c) have been met.

(Citation omitted.) *Gilbert v. Freeland*, 364 Ga. App. 501, 502 (874 SE2d 403) (2022). In conducting our review, we construe the evidence and make all reasonable inferences in the light most favorable to Prince, as the nonmovant. *Screven County v. Sandlin*, 363 Ga. App. 825, 826 (872 SE2d 890) (2022).

So viewed, the record shows that Prince was an employee of one of the airlines at the Atlanta airport. On days she was scheduled to work, she would park in off-site employee parking and take a shuttle ABM owned and operated. On November 17, 2016, Prince parked in the employee parking lot and boarded the shuttle bus to the airport. Merdie Rozier was driving the shuttle, and one other person was riding the bus. Shortly after Rozier pulled away from the curb, he lost control of the bus, rolled

2

over the curb, and struck a street sign before coming to a stop. Prince struck her head on a pole inside the bus. Rozier exited the bus, walking unsteadily, and moved toward the front of the bus to survey the damage. The other passenger observed Rozier start pulling his hair and acting confused. As Rozier returned to the bus, he collapsed and lost consciousness, and Prince noticed that he was bleeding from his mouth.

Police responded to the scene and were able to communicate with Rozier when he regained consciousness, and they observed that he had vomited blood. They determined that the accident was the result of a medical emergency. Rozier was taken by ambulance to the hospital, where he died several days later due to a massive gastrointestinal hemorrhage.

Prince sued ABM for damages related to her injuries, alleging that ABM was negligent under a theory of respondeat superior, and that it was directly liable for negligent hiring, retention, training, and supervision. In its answer, ABM admitted that Rozier was acting in the scope of his employment at the time of the accident.

ABM moved for summary judgment, arguing that it had not breached any duty to Prince because the accident was caused by an "act of God." It also asserted that there was no evidence to establish negligent hiring, retention, training, or supervision. In support of its motion, ABM submitted the testimony of its director of

3

transportation, and expert testimony from an intensive care physician. ABM's director explained that the company was unable to locate Rozier's employment file, but it produced his motor vehicle records, drug screens, driver's license, and Department of Transportation certification. None of those documents showed any conduct or conditions that would have excluded Rozier from driving the shuttle, and the director noted that Rozier would not have received his DOT card if he had not been medically cleared to drive. In addition, ABM's director stated that she had no knowledge that Rozier was absent prior to the accident due to illness. The director had also viewed video from the shuttle bus on the day of the accident, and noted that the crash appeared to be the result of a medical emergency.

ABM's expert physician testified that Rozier suffered a massive gastrointestinal hemorrhage that caused him to become confused and lose consciousness before going into hypovolemic shock due to the blood loss.[1] After reviewing the records from the accident, she opined that the medical emergency was

---

[1] Hypovolemic shock is "an emergency condition in which severe blood . . . loss makes the heart unable to pump enough blood to the body." See "Hypovolemic shock," *https://medlineplus.gov* (last visited October 26, 2022). Gastrointestinal bleeding can cause such blood loss. Id.

not foreseeable, and Rozier could have experienced the beginning stages of shock prior to the accident without realizing it.

In response to the summary judgment motion, Price argued that the medical condition was foreseeable. Price proffered expert testimony from a gastroenterologist who reviewed Rozier's medical history and opined that Rozier would have known about his risk for severe bleeding. The expert noted that Rozier was hospitalized in June 2016, and a CAT scan showed esophogeal varices.[2] Although the varices were not bleeding at that time, the fact that they were visible on the scan increased the risk for bleeding in the future. As a result, the expert opined that Rozier's medical emergency was foreseeable to Rozier, but he expressed no opinion as to whether it would have been foreseeable to ABM.

Prince also submitted Rozier's medical records, which showed that Rozier experienced bleeding varices in 2010 and suffered from cirrhosis, and that varices were present when he was hospitalized in 2016. When Rozier was discharged from his hospital stay in 2016, he was advised not to drive until cleared by his primary care

---

[2] Esophogeal varices are enlarged veins that can rupture and bleed heavily. See "Bleeding esophogeal varices," https://medlineplus.gov (last visited October 26, 2022).

physician, and one of the conditions noted in his plan of care was hypervolemia.[3]

Additionally, Rozier's time sheets for June 2016 showed a three-week period immediately after this hospitalization in which he did not work.Following a hearing, the trial court denied ABM's motion for summary judgment, finding that ABM had the burden of establishing the "act of God" defense, and that it could not rely on an absence of evidence to meet its burden. The trial court noted the lack of Rozier's complete employment file and the fact that there was no evidence Rozier received clearance to drive after his June 2016 hospitalization. Because it allowed the underlying negligence claim to proceed, the trial court also denied the motion with regard to the allegations of negligent hiring, retention, training, and supervision, which the trial court mistakenly referred to as "derivative" claims. The trial court granted a certificate of immediate review, and we granted the interlocutory application. ABM now appeals.

1. ABM first argues that the trial court erred by finding a factual question on whether Rozier's medical emergency was foreseeable, and whether Rozier's knowledge, if any, should be imputed to ABM. It notes that it is pure speculation

---

[3] Hypovolemia refers to the body's loss of fluid due to, among other things, illness. See https://my.clevelandclinic.org/health/diseases/22963-hypovolemia (last visited October 26, 2022). Symptoms include weakness, fatigue, and dizziness. Id.

whether Rozier even knew of the medical risk. We disagree and conclude that the trial court properly denied summary judgment as to this claim.

Under Georgia law, an employer is responsible for the negligent or intentional torts of their employee, provided they are committed by the employee in furtherance and within the scope of the employer's business. *Lucas v. Beckman Coulter, Inc.*, 348 Ga. App. 505, 508 (2) (823 SE2d 826) (2019); see also OCGA § 51-2-2. "To state a cause of action for negligence, a plaintiff must establish the following essential elements: (1) a legal duty; (2) a breach of this duty; (3) an injury; and (4) a causal connection between the breach and the injury." (Citation and punctuation omitted.) *R & R Insulation Svcs. v. Royal Indem. Co.*, 307 Ga. App. 419, 426 (2) (705 SE2d 223) (2010). Here, ABM admitted that Rozier was its employee and that he was acting in the scope of his employment when the accident occurred.

With regard to the causation element,

> where the driver of an automobile suffers an unforeseeable illness which causes him to suddenly lose consciousness and control of the automobile, the driver's loss of control is not negligent, and he is not liable for any damages caused by the out-of-control automobile. The driver must show that an unforeseeable loss of consciousness produced the accident without any contributing negligence on his part.

7

(Citations omitted.) *Screven County*, 363 Ga. App. at 827; see also *Gilbert*, 364 Ga. App. at 504 (2); *Lewis v. Smith*, 238 Ga. App. 6 (517 SE2d 538) (1999); OCGA § 1-3-3 (3) ("act of God" refers to "an accident produced by physical causes which are irresistible or inevitable, such as . . . illness.").

As we have explained, an "act of God is an affirmative defense upon which the defendant carries the burden of proof on summary judgment, and a defendant moving for summary judgment on this defense may not rely upon an absence of evidence in the record but must carry the burden of affirmatively proving the defense." (Citation and punctuation omitted.) *Gilbert*, 364 Ga. App. at 504 (2); see also *Lewis*, 238 Ga. App. at 7. And, because the defense requires that there be no negligence by the driver, the driver generally must show that the illness was not foreseeable. *Lewis*, 238 Ga. App. at 7.

The parties do not dispute that Rozier suffered from a medical emergency or that the emergency caused him to lose control of the bus. ABM contends, however, that it cannot be liable because the risk was not foreseeable.[4] The burden to prove an

---

[4]ABM mistakenly focuses on its own knowledge for purposes of the defense. Although the employer's knowledge would be relevant to a direct liability claim, such as for negligent entrustment, hiring, or retention, it is not relevant to a vicarious liability claim. See, e.g., *Screven County*, 363 Ga. App. at 827; *Battey*, 123 Ga. App. at 685.

8

affirmative defense requires ABM to come forth with evidence. In this regard, ABM's director of transportation testified that the company did not have all of Rozier's employment file, and she could only say that he had passed the background checks, drug screening, and medical examination in order to obtain his DOT certification.

Additionally, ABM's medical expert stated that the medical emergency was not foreseeable. But Prince submitted Rozier's medical history, which included evidence that he previously suffered from esophageal varices, and her expert opined that Rozier would have known about his risk for hypovolemia. *Ford v. Macon-Bibb County*, 364 Ga. App. 444, 430 (3) (875 SE2d 427) (2022) (conflicting evidence as to affirmative defense precluded summary judgment). Thus, ABM merely points to an absence of evidence, which is insufficient to meet its burden of establishing its affirmative defense. *Gilbert*, 364 Ga. App. at 504 (2); see also *Lewis*, 238 Ga. App. at 7. As a result, the trial court correctly found that ABM was not entitled to summary judgment on the respondeat superior claims.

2. ABM next argues that the trial court erred by permitting the negligent hiring, retention, training, and supervision claims to proceed because there was no evidence to support those allegations. We agree that ABM was entitled to summary judgment on these claims.

9

In contrast to respondeat superior claims, claims of negligent hiring, retention, training, and supervision are based on the *employer's* negligence.[5] See *Quynn v. Hulsey*, 310 Ga. 473, 475 (850 SE2d 725) (2020).

a. *Hiring and retention.*

"A defendant employer has a duty to exercise ordinary care not to hire or retain an employee the employer knew or should have known posed a risk of harm to others where it is reasonably foreseeable from the employee's tendencies or propensities that the employee could cause the type of harm sustained by the plaintiff." (Citation and punctuation omitted.) *Drury v. Harris Ventures*, 302 Ga. App. 545, 548 (2) (691 SE2d 356) (2010); see also OCGA § 34-7-20; *Advanced Disposal Svcs. Atlanta v. Marczak*, 359 Ga. App. 316, 320 (3) (857 SE2d 494) (2021); *Allen v. Zion Baptist Church of Braselton*, 328 Ga. App. 208, 213-214 (1) (b) (761 SE2d 605) (2014); *Doe v. Young*

_____

[5] Because we conclude that these claims cannot survive due to the failure to support the allegations with any evidence, we need not consider whether ABM satisfied its duty by relying on the DOT certification and the Federal Motor Safety Regulations, or whether the trial court applied a heightened standard. Nevertheless, we note that requiring employers to investigate an employee's answers on his application or medical report could expose the employer to liability for potential violations of employment and disability law. See *Drury v. Harris Ventures*, 302 Ga. App. 545, 549 (2) (691 SE2d356) (2010) ("To require an employer to independently verify each area of possible error on the application would render employment decisions in even the most basic settings untenably fraught with potential liability.")

10

*Women's Christian Assn. of Greater Atlanta*, 321 Ga. App. 403, 408 (2) (740 SE2d 453) (2013). Negligent hiring and retention are closely related, separated only by *when* the employer becomes aware of the information that amounts to reasonable notice of the employee's incompetence. If the employer discovers the employee's incompetence after hiring, the retention becomes the negligent act. *Allen*, 328 Ga. App. at 212 (1).

Prince bore the burden of establishing her claims for negligent hiring and retention. *Johnson v. Avis Rent A Car System*, 311 Ga. 588, 589 (858 SE2d 23) (2021). She has not met that burden. Prince points to no specific evidence to establish ABM had knowledge of the risks here, or that it failed to act with ordinary care in hiring and retaining Rozier. There was no evidence that Rozier ever experienced medical issues while at work. Price relied solely on evidence that Rozier was absent from work for approximately three weeks. The trial court acknowledged at the summary judgment hearing that it was pure speculation that ABM knew Rozier was out for medical reasons. And, as we have held, mere hunches and speculation will not raise a question of fact to avoid summary judgment. *Cleveland v. Team RTR2, LLC*, 359 Ga. App. 104, 110 (2) (b) (854 SE2d 756) (2021). We will not hold that an

11

extended absence from work, without more, is sufficient to put an employer on notice of a dangerous medical condition that may occur sometime in the future.

b. *Negligent training*.

"To establish a negligent training claim, a plaintiff must demonstrate that inadequate training caused a reasonably foreseeable injury." *Advanced Disposal Svcs. Atlanta*, 359 Ga. App. at 319 (2). Prince has pointed to no evidence that ABM's training policies were related to the accident in any way, and this claim thus fails. See *Edwards v. Campbell*, 338 Ga. App. 876, 881-882 (2) (792 SE2d 142) (2016).

c. *Negligent supervision*.

Finally, to defeat summary judgment on an issue of negligent supervision, a plaintiff must produce some evidence of incidents similar to the behavior that was the cause of the injury at issue. *Remediation Resources v. Balding*, 281 Ga. App. 31, 34 (2) (635 SE2d 332) (2006). As we have explained, "[a]n employer may be held liable for negligent supervision only where there is sufficient evidence to establish that the employer reasonably knew or should have known of an employee's tendencies to engage in certain behavior relevant to the injuries allegedly incurred by the plaintiff." (Citation and punctuation omitted.) *Leo v. Waffle House*, 298 Ga. App. 838, 841 (2) (681 SE2d 258) (2009). But Prince proffered no evidence of similar behavior that

12

would have put ABM on notice, and as a result, this claim also fails. See *Hobbs v. Integrated Fire Protection*, 357 Ga. App. 790, 800 (2) (b) (850 SE2d 256) (2020).

For these reasons, we conclude that the trial court properly denied summary judgment with regard to the respondeat superior claims against ABM, but it erred by denying the motion as to claims arising from ABM's direct liability. Accordingly, we affirm the trial court's order in part, and reverse in part.

*Judgment affirmed in part; reversed in part. Dillard, P. J., and Mercier, J., concur.*